# Exhibit 2
## Complaint

1  Michael L. Baum, Esq., CA Bar No. 119511
   mbaum@baumhedlundlaw.com
2  R. Brent Wisner, Esq., CA Bar No. 276023
   rbwisner@baumhedlundlaw.com
3  Adam M. Foster, Esq. CA Bar No. 301507
   afoster@baumhedlundlaw.com
4  Pedram Esfandiary, Esq., CA Bar No. 312569
   pesfandiary@baumhedlundlaw.com
5  BAUM HEDLUND ARISTEI & GOLDMAN, P.C.
   12100 Wilshire Blvd., Suite 950
6  Los Angeles, CA 90025
   Tel:  (310) 207-3233 / Fax:  (310) 820-7444
7
8  *Attorneys for Plaintiffs*

9               **UNITED STATES DISTRICT COURT**
10              **CENTRAL DISTRICT OF CALIFORNIA**
11

| | |
|---|---|
| 12 MSP RECOVERY CLAIMS, SERIES LLC, a Delaware entity; MSPA CLAIMS 13 1, LLC, a Florida entity, | Case No.: 2:17-cv-2522-CAS-PLA |
| 14 Plaintiffs, | **THIRD AMENDED CLASS ACTION COMPLAINT** |
| 15 | |
| vs. 16 | **DEMAND FOR JURY TRIAL** |
| 17 FARMERS INSURANCE EXCHANGE[1]; ILLINOIS FARMERS INSURANCE 18 COMPANY; FARMERS INSURANCE OF COLUMBUS; 21ST CENTURY 19 INSURANCE COMPANY; SECURITY NATIONAL INSURANCE CO.; 21ST 20 CENTURY CENTENNIAL INSURANCE CO.; BRISTOL WEST PREFERRED 21 INSURANCE CO.; MID-CENTURY INSURANCE COMPANY; FOREMOST 22 PROPERTY AND CASUALTY COMPANY; 21ST CENTURY PREMIER 23 INSURANCE COMPANY; BRISTOL WEST INSURANCE COMPANY; 24 FARMERS NEW INSURANCE COMPANY; 21ST CENTURY NORTH | |

25

26
27  [1] Plaintiffs previously named Farmers Group Inc. d/b/a Farmers Underwriter's ASS'N as
    a defendant.  However, upon representations by Defendants' counsel that Farmers Group
28  Inc. does not write auto insurance policies, Plaintiffs have not included Farmers Group
    Inc. as a defendant in this Third Amended Complaint.

AMERICA INSURANCE COMPANY;
21ST CENTURY INDEMNITY
INSURANCE COMPANY; 21ST
CENTURY PREFERRED INSURANCE
COMPANY; FIRE INSURANCE
COMPANY; FOREMOST SIGNATURE
INSURANCE COMPANY; FARMERS
NEW CENTURY INSURANCE
COMPANY.

Defendants.

Plaintiffs MSP Recovery Claims, Series LLC, a Delaware entity, and MSPA Claims 1, LLC, a Florida entity (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through the undersigned attorneys, bring this action against Farmers Insurance Exchange; Farmers Insurance Company of Columbus, Inc.; Illinois Farmers Insurance Company; 21st Century Insurance Company; Security National Insurance Co.; 21st Century Centennial Insurance Co.; Bristol West Preferred Insurance Co.; Mid-Century Insurance Company; Foremost Property and Casualty Company; 21st Century Premier Insurance Co.; Bristol West Insurance Co.; 21st Century North America Insurance Co.; 21st Century Indemnity Insurance Company; 21st Century Preferred Insurance Company; Fire Insurance Exchange; Foremost Signature Insurance Company; Farmers New Century Insurance Company (hereinafter collectively referred to as "Defendants"), and state as follows:

## INTRODUCTION

1.     Defendants failed to fulfill their statutorily-mandated duty to reimburse Medicare Advantage Organizations/Medicare Advantage Plans ("MAOs/MA Plans") and other similar entities for medical expenses arising out of the use, maintenance or operation of an automobile.

2.     Under Medicare Secondary Payer provisions of the Medicare Act, MAOs/MA Plans are, by law, secondary payers for any medical expenses that are also covered by the terms and provisions of an insurance policy. This means Medicare

**THIRD AMENDED COMPLAINT**

always pays secondary to a primary payer.  If another source is responsible for payment of a medical claim(s), i.e., an insurance policy, that source is required to pay for those medical claim(s) up to the policy limit before Medicare is required to pay.  And, if Medicare does pay first, by law, those payments are considered "conditional" and the primary payer is required to reimburse the Medicare coverage provider.

3.     Defendants offer automobile insurance policies that contain no-fault[2] and/or medical payments ("Med Pay") coverage for any automobile accident-related medical expenses. The policies provide primary coverage for medical bills incurred as a result of an automobile accident.

4.     Plaintiffs[3] and the putative class members ("Class Members") paid Medicare benefits on behalf of the Medicare-eligible beneficiaries enrolled under the Medicare Advantage program. These Medicare beneficiaries were simultaneously covered by no-fault insurance policies issued by Defendants, which made Defendants the primary payer for the medical bills, services.  MAOs/MA Plans who were financially responsible as a result of agreement directly or ultimately back to Medicare itself paid or otherwise incurred losses for the medical items or treatment even though Defendants were responsible for paying those expenses.

5.     This lawsuit seeks reimbursement for those accident-related medical expenses paid for by the Plaintiffs' assignors and all other MAOs/MA Plans that should have been paid, in the first instance, by Defendants under the Medicare Secondary Payer provisions.

---

[2] The term "no-fault insurance" means insurance that covers medical expenses sustained in the use, occupancy, or operation of an automobile, regardless of who may have been responsible for causing the accident.  The term also includes any medical payments coverage within the automobile insurance policy, which are also untethered to a finding of fault.

[3] Plaintiffs assert the rights of MAOs/MA Plans via assignment of all rights, title, and interest allowing them to bring these claims.

3

**THIRD AMENDED COMPLAINT**

6.     As such, Plaintiffs filed this action on behalf of themselves and all other similarly situated Class Members for: (1) double damages, pursuant to the Medicare Secondary Payer private cause of action, 42 U.S.C. § 1395y(b)(3)(A); and (2) breach of contract under Plaintiffs' direct right of recovery.

## JURISDICTION AND VENUE

7.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332(d). At least one member of the class is a citizen of a different state than the Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

8.     This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 since the claims alleged herein arise under the laws of the United States. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) for any non-federal claims alleged herein.

9.     This Court has personal jurisdiction over Defendants insofar as the Defendants are authorized and licensed to conduct business in California, maintain and carry on systematic and continuous contacts in this judicial district, regularly transact business within this judicial district, and regularly avail themselves of the benefits in this judicial district.

10.     Venue is proper before this Court pursuant to 28 U.S.C. § 1391.

## BACKGROUND

### I.   Medicare

11.     In 1965, Congress enacted the Medicare Act with the purpose of establishing a federally-funded health insurance program for the elderly and disabled.

12.     The Medicare Act consists of five parts: Part A, Part B, Part C, Part D, and Part E. Parts A and B create, describe, and regulate traditional fee-for-service, government-administered Medicare. *See* 42 U.S.C. §§ 1395c to 1395i–5; §§ 1395–j to 1395–w. Under Parts A and B, Medicare provides hospital insurance and coverage for

**THIRD AMENDED COMPLAINT**

medically necessary outpatient and physician services. 42 U.S.C. § 1395w-21(a)(1)(A). These benefits are administered on a per-fee basis, meaning Medicare pays for a beneficiary's medical needs as they arise. The United States Centers of Medicare & Medicaid Services ("CMS") provides coverage under Parts A & B. Part C outlines the Medicare Advantage program—described in further detail below—wherein Medicare beneficiaries may elect to use private insurers, *i.e.*, MAOs/MA Plans, paid for by the United States, to provide Medicare benefits. 42 U.S.C. §§ 1395w–21–29. Part D provides for prescription drug coverage for Medicare beneficiaries, and Part E contains various miscellaneous provisions.

## II.   Medicare Secondary Payer Laws

13.   At the time of its inception, Medicare was the primary payer of medical costs. When a Medicare beneficiary was injured, the medical bill was submitted directly to Medicare, even if there was overlapping insurance coverage for that patient. However, in an effort to reduce escalating costs, Congress altered the Medicare payment scheme in 1980 by adding the Medicare Secondary Payer ("MSP") provisions to the Medicare Act.

14.   Under the MSP provisions, codified at 42 U.S.C. § 1395y, Medicare is the "secondary payer" to all other sources of coverage. If there is overlapping insurance coverage for a particular beneficiary, that overlapping coverage is primary, *i.e.*, it pays the medical expense first—Medicare is always secondary.

15.   The MSP provisions implement this scheme by forbidding Medicare from paying medical expenses when "payment has been made or can reasonably be expected to be made . . . under an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance." 42 U.S.C. § 1395y(b)(2)(A)(ii). This prohibition applies to any "[p]ayment under" the Medicare Act. 42 U.S.C. § 1395y(b)(2)(A). If a primary payer, such as a no-fault insurer, "has not made or cannot reasonably be expected to make payment," Medicare makes a conditional payment. 42

**THIRD AMENDED COMPLAINT**

U.S.C. § 1395y(b)(2)(B)(i). However, since Medicare is the secondary payer, the primary payer (such as a no-fault or medical payments insurer) must reimburse Medicare for all conditional payments. 42 U.S.C. § 1395y(b)(2)(B)(ii).

16.    To enforce this scheme, the MSP provisions created "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement)[.]" 42 U.S.C. § 1395y(b)(3)(A).

17.    As no-fault and/or Med Pay insurers that issue policies pursuant to each state's no-fault laws[4] or other laws allowing issuance of no-fault and Med Pay policies, Defendants are primary payers and plans. *See* 42 U.S.C. § 1395y(b)(2)(A) (defining "primary plan" to include no-fault insurance); 42 C.F.R. § 411.21 (same).

## III.    Medicare Advantage Organizations

18.    In 1997, Congress amended the Medicare Act and added Part C. "The congressional goal in creating the Medicare Part C option was to harness the power of private sector competition to stimulate experimentation and innovation to create a more efficient and less expensive Medicare system." D. Gary Reed, Medicare Advantage Misconceptions Abound, 27 Health Law 1, 3 (2014). Part C gives Medicare beneficiaries the option of receiving Medicare benefits through private insurers (*i.e.*,

---

[4] Delaware Motorists Protection Act, 21 Del.C. § 2118; Florida Automobile Reparations Act, Fla. St. Ann. §§ 627.730 – 627.746; Hawaii Motor Vehicle Insurance Law, H.R.S. §§ 431:10C-103.5 – 103.6 *et al.*; Kansas Automobile Injury Reparations Act, K.S.A. §§ 40-3101 *et seq.*; Kentucky Motor Vehicle Reparations Act, K.R.S. §§ 340.39-040 *et al.*; Massachusetts Motor Vehicle laws, M.G.L.A. 90 § 34M; Michigan No-Fault Insurance Act, M.C.L.A. §§ 500.3101 *et seq.*; Minnesota No-Fault Automobile Insurance Act, M.S.A. §§ 65B.41 *et seq.*; New Jersey Automobile Reparation Reform Act, N.J.S.A. §§ 39:6A-1 *et seq.*; New York Comprehensive Motor Vehicle Insurance Reparations Act, N.Y. Ins. Law §§ 5101 *et seq.*; North Dakota Insurance Code, N.D.C.C. §§ 26.1-41-01 *et seq.*; Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. §§ 1701

1    MAOs/MA Plans).[5]

2        19.    MAOs/MA Plans enter into a contract with CMS to administer and provide

3    the same benefits received under traditional Medicare. 42 U.S.C. §§ 1395w-21, 1395w-

4    23. Pursuant to this contract, MAOs/MA Plans receive a fixed payment from CMS for

5    each enrollee. MAOs/MA Plans do not issue a Medicare "insurance policy" but, rather,

6    send out a document describing the Medicare benefits that enrollees receive. They do not

7    pay benefits pursuant to a 'policy', but rather under a statutory framework. Thus,

8    MAOs/MA Plans pay healthcare providers directly for the care received by Part C

9    enrollees. If the costs of this care exceed the fixed payment received from the

10   government, the MAO/MA Plan assumes the risk and cost. However, if that care costs

11   less than the fixed payment, the MAO/MA Plan keeps the difference as profit. Thus,

12   MAOs/MA Plans are incentivized to provide health insurance more efficiently and focus

13   on positive health outcomes in a way that traditional fee-for-service Medicare models

14   are not. *See* H.R.Rep. No. 105–149, at 1251 (1997) (Part C allows "the Medicare

15   program to utilize innovations that have helped the private market contain costs and

16   expand health care delivery options.").

17

18       20.    To become an MAO/MA Plan, a private insurer must enter a bidding

19   process, meeting certain requirements set by CMS. Additionally, in providing the basic

20   benefits offered to traditional Medicare enrollees, MAOs/MA Plans must abide by

21   national coverage determinations provided by CMS and all coverage disputes between

22   enrollees and MAOs/MA Plans must go through the traditional Medicare appeals

23   process. CMS sets the fixed rate at which MAOs/MA Plans will be remunerated per

24   enrollee and establishes services the MAO must provide.

25

26   *et seq.*; Utah Motor Vehicle Insurance law, U.C.A. 1953 §§ 31A-22-307 *et al.*; Puerto

27   Rico Automobile Accident Social Protection Act, 9 L.P.R.S. §§ 2051 *et seq.*

28   [5] Originally, these plans were considered "Medicare+Choice" plans, but the Medicare
     Modernization Act (MMA) of 2003 renamed this service "Medicare Advantage" plans.

**THIRD AMENDED COMPLAINT**

21.     An enrollee's health coverage with an MAO/MA Plan is strictly construed and regulated by CMS. For instance, CMS creates templates that MAOs/MA Plans must utilize when creating documents, including among others, the evidence of coverage ("EOC"), a document that describes in detail the health care benefits covered by the health plan. CMS requires that every evidence of coverage contain the following language:

> [w]e have the right and responsibility to collect for covered Medicare services for which Medicare is not the primary payer. According to CMS regulations at 42 CFR §§ 422.108 and 423.462, [insert 2017 plan name], as a Medicare Advantage Organization, will exercise the same rights of recovery that the Secretary exercises under CMS regulations in subparts B through D of part 411 of 42 CFR and the rules established in this section supersede any State laws.

22.     The amount paid to the MAO/MA Plan is carefully calibrated, taking into account, such factors as the geographic location, age, disability status, gender, institutional status, and health status of *each* Medicare Advantage enrollee, so as to ensure actuarial equivalence with the traditional Medicare fee-for-service program option. *See* 42 U.S.C. § 1395w-23(c).

23.     Currently, there are over 16 million individuals enrolled in Medicare Advantage plans nationwide. More than 37 million individuals are enrolled in Medicare prescription drug plans ("PDPs"), either on a stand-alone basis or in connection with a Medicare Advantage plan.

24.     The size and expense of the Medicare Advantage program makes it important that auto insurance companies, like Defendants, do not deflect their financial obligations under the MSP law onto MAOs/MA Plans and ultimately onto the Medicare Trust Funds.[6]

---

[6] Medicare is paid for through two trust fund accounts held by the U.S. Treasury.

**THIRD AMENDED COMPLAINT**

25.     Beneficiaries who receive their benefits through the traditional Medicare scheme and those who elect to receive their benefits through an MAO/MA Plan are all considered Medicare beneficiaries.  Moreover, the MSP provisions apply with equal force to MAOs/MA Plans.  Indeed, MAOs/MA Plans are specifically allowed to "exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f).

26.     The legislative history of the MSP provisions demonstrates that MAOs/MA Plans were intended to occupy a status analogous to that of traditional Medicare:

> [u]nder original fee-for-service, the Federal government alone set the legislative requirements regarding reimbursement, covered providers, covered benefits and services, and mechanisms for resolving coverage disputes. Therefore, the Conferees intend that this legislation provide a clear statement extending the same treatment to private [MA] plans providing Medicare benefits to Medicare beneficiaries.

H.R.Rep. No. 105–217, at 638 (1997).

27.     Part C of the Medicare Act also contains the following important provisions:

> Notwithstanding any other provision of law, a Medicare+Choice organization may (in the case of the provision of items and services to an individual under a Medicare+Choice plan under circumstances in which payment under this subchapter is made secondary pursuant to section 1395y(b)(2) of this title) charge or authorize the provider of such services to charge, in accordance with the charges allowed under a law, plan, or policy described in such section—
>
> (A)     the insurance carrier, employer, or other entity which under such law, plan, or policy is to pay for the provision of such services, or
>
> (B)     such individual to the extent that the individual has been

9

**THIRD AMENDED COMPLAINT**

1    paid under such law, plan, or policy for such services.

2    42 U.S.C. § 1395w–22(a)(4).

3        28.    Section 1395y(a)(1)(A) of the Medicare statute states that, "no payment

4    may be made under [the Medicare statute] for any expenses incurred for items or

5    services which … are not ***reasonable*** and ***necessary*** for the diagnosis or treatment of

6    illness or injury." 42 U.S.C. § 1395y(a)(1)(A) (emphasis added).

7
        29.    Because this Section contains an express condition of payment – that is, "no
8
     payment may be made" – it explicitly links each Medicare payment to the requirement
9
     that the particular item or service be "reasonable and necessary."
10
        30.    Once an MAO/MA Plan makes a payment for medical items and services
11
     on behalf of its enrollees, the payment is conclusive proof that the items and services
12
     were reasonable and necessary.
13

14       31.    If a Medicare beneficiary or primary payer contests an MAO/MA Plan's

15   right to reimbursement, the claim is construed as "arising under" the Medicare Act.

16   Therefore, the time limitations for contesting whether a claim is reasonable or necessary

17   under the Medicare Act applies.

18       32.    In this case, Defendants failed to administratively appeal the MAOs/MA

19   Plans' right to reimbursement within the administrative remedies period on a class-wide

20   basis. Defendants, therefore, are time-barred from challenging the propriety or amounts

21   paid.

22       33.    Furthermore, the MSP provisions create a private cause of action against a

23   primary plan when the primary payer fails to pay first or does not reimburse an MAO for

24   its payment: "There is established a private cause of action for damages (which shall be

25   in an amount double the amount otherwise provided) in the case of a primary plan which

26   fails to provide for primary payment (or appropriate reimbursement) in accordance with

27   [the requirements of the MSP Act]." § 1395y(b)(3)(A).  The provisions do not place any

28

1  limitations on which private parties may bring suit.

2  **IV.    Primary Payer Reporting Requirements**

3      34.    In 2007, the Medicare Act was once again amended by the Medicare,

4  Medicaid and SCHIP Extension Act of 2007 ("MMSEA"), which aimed to improve the

5  ability of CMS and MAOs/MA Plans to administer Medicare benefits.  Part of those

6  changes specifically aimed to help CMS and MAOs/MA Plans identify when a Medicare

7  beneficiary was covered by a primary insurance payer.  When automobile accident

8  victims go to the emergency room, they do not typically present their auto insurance

9  card—they present their Medicare insurance credentials, and the medical expenses are

10  sent to the Medicare provider.  Then, when the bill comes due, unless the auto insurance

11  company affirmatively discloses that it is the primary payer for that medical expense,

12  neither CMS nor MAOs/MA Plans know that these medical expenses should be paid by

13  a primary payer.  Consequently, CMS and MAOs/MA Plans pay the bill, and the

14  automobile insurer avoids having to pay—at the expense of taxpayers.

15

16      35.    The 2007 amendments, therefore, created an affirmative duty on primary

17  payers, such as Defendants, to notify Medicare and MAOs/MA Plans when they should

18  pay for medical expenses or be primary payers.  Specifically, Responsible Reporting

19  Entities ("RREs"), which include automobile insurers like the Defendants, must

20  determine whether its insureds are Medicare beneficiaries when they have been injured

21  in an automobile accident.  42 U.S.C. §§ 1395y(b)(7)(A)(i)[7] (RREs shall "determine

22  whether a claimant (including an individual whose claim is unresolved) is entitled to

23  benefits under" Medicare).  If an insured is a Medicare beneficiary, the RRE must

24  electronically notify CMS of the accident and report the Medicare beneficiary's full

25  name, Medicare Health Insurance Claim Number ("HICN"), gender, date of birth,

26

27

28

[7] *See* 42 C.F.R. § 411.25.

11

**THIRD AMENDED COMPLAINT**

complete address, and phone number. 42 U.S.C. § 1395y(b)(7)(A)(ii).[8] Then, when CMS or an MAO receives a medical claim for payment for that identified Medicare beneficiary/insured, the claim can be cross-checked against the notification database to determine whether there is a primary payer responsible for the medical claim. Anticipating the burden of the new reporting requirements, CMS developed a "query process" whereby an RRE can determine a claimant's Medicare status electronically and without authorization. RREs can electronically query whether a particular insured is a Medicare beneficiary and, if so, make sure to notify Medicare when that insured is in an accident that resulted in the provision of medical treatment.

36. An insurance company's failure to comply with these reporting requirements results in a civil money penalty of up to $1,000.00 for each day of noncompliance with respect to each claimant. 42 U.S.C. § 1395y(b)(8)(E)(i).

37. However, compliance with these reporting requirements does not absolve the primary payer of its obligation to pay first. The reporting requirements are separate and apart from a primary payer's obligation to pay first under the MSP provisions. Reporting does not, itself, provide a safe harbor from making primary payments. It only avoids the imposition of civil penalties. If a primary payer was responsible to pay first, it must pay first regardless of conduct, intent, or even the primary payer's knowledge of a potential secondary payer. The obligation of a primary payer to pay first or reimburse CMS or MAOs/MA Plans is only discharged by making the payment.

## V. Personal Injury Protection (PIP) / Basic Reparation Benefits (BRB) / Medical Payment (Med Pay) Insurance

38. Personal Injury Protection ("PIP"), Basic Reparation Benefits ("BRB"), and Medical Payment ("Med Pay") are types of automobile insurance coverage that pay for

---

[8] RREs are also required to notify CMS and MAOs/MA Plans when the RRE has made the determination to assume responsibility for ongoing medical services or items for one

**THIRD AMENDED COMPLAINT**

medical expenses arising from an automobile accident.

39. PIP, BRB, and Med Pay are sometimes referred to as "no-fault" coverage because the policies are designed to pay for medical expenses regardless of who is "at fault" in causing the injury. If a person covered under a policy which includes PIP, BRB, or Med Pay coverage is injured in an automobile accident, the insurance provider is obligated to pay for that person's medical expenses, up to the policy's limit, without regard to fault.

40. Certain states and territories, *i.e.*, Hawaii, Kansas, Kentucky, Massachusetts, Michigan, Minnesota, New Jersey, New York, North Dakota, Pennsylvania, Puerto Rico, and Utah, mandate minimum PIP, BRB, or Med Pay coverage.[9] For example, in Massachusetts, drivers are required to have at least $8,000 in PIP coverage. This means the first $8,000 of medical expenses for a person involved in an automobile accident in Massachusetts are covered by the insured's PIP policy regardless of fault. Other states require automobile insurance companies to offer PIP, BRB, or Med Pay coverage as an add-on to traditional insurance, *i.e.*, Arkansas, Delaware, District of Columbia, Maryland, New Hampshire, Oregon, South Dakota, Texas, Virginia, Washington, and Wisconsin. In addition, other states have no specific regulations regarding PIP, BRB, or Med Pay coverage, but such coverage is often provided for by auto insurance companies such as Defendants.

41. Under the MSP provisions, PIP, BRB, Med Pay and other "no-fault" insurance providers are considered "primary payers" under Medicare. This means, when a Medicare beneficiary is involved in an accident, if that beneficiary has PIP, BRB, or Med Pay coverage, the no-fault coverage must pay for accident-related medical expenses

---

their insureds that is also a Medicare beneficiary.
[9] In Kentucky, New Jersey, and Pennsylvania, the states require that drivers choose between either no-fault or traditional tort law forms of automobile insurance.

as a primary payer. Therefore, Medicare benefits only apply once the policy limits of the PIP, BRB, or Med Pay coverage have been reached.[10]

42.     Each state's no-fault law is intended to expeditiously provide insurance benefits to the insured for medical treatment regardless of fault.

43.     The purpose of the no-fault statutory framework is to provide swift and virtually automatic payment. All no-fault laws abolish "a traditional common-law right by limiting the recovery available to car accident victims" and in exchange, require PIP insurance that is recoverable without regard to fault. No-fault insurers are primary payers of any bills for medical services and supplies incurred by their insureds resulting from the use, maintenance, and/or operation of a motor vehicle.

### PARTIES

44.     MSP Recovery Claims, Series LLC is a Delaware entity with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSP Recovery Claims, Series LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendants. Numerous MAOs/MA Plans have assigned their recovery rights to assert the causes of action alleged in this Complaint to designated series LLCs of the Plaintiff, and Plaintiff maintains the legal right, by and through its limited liability company agreement, to sue on behalf of each of its designated series LLCs. As such, Plaintiff has the right and authority to seek reimbursement of Medicare payments made by the MAOs/MA Plans that should have been paid, in the first instance, by Defendants.

45.     Plaintiff MSPA Claims 1, LLC is a Florida entity, with its principal place of business located at 5000 S.W. 75th Avenue, Suite 400, Miami, Florida 33155. MSPA

---

[10] Regardless of whether payments to an injured party are made pursuant to a voluntary settlement or to satisfy a judgment, Medicare is entitled to reimbursement of payments made for medical treatment related to the automobile accident injuries covered under the PIP, BRB, or Med Pay coverage.

**THIRD AMENDED COMPLAINT**

Claims 1, LLC is a citizen of the State of Florida and is not a citizen of the state of any of the Defendants. Numerous MAOs/MA Plans have assigned their recovery rights to assert the causes of action alleged in this Complaint to Plaintiff. As part of those assignments, Plaintiff is empowered to recover reimbursement of Medicare payments made by the MAOs/MA Plans that should have been paid, in the first instance, by the Defendants.

46. Plaintiffs have been assigned all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for enrollees under the MSP laws; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

47. Defendant Farmers Insurance Exchange is a California company with its principal place of business located at 4680 Wilshire Blvd., Los Angeles, CA 90010.

48. Defendant Farmers Insurance Company of Columbus, Inc. is an Ohio company with its principal place of business located at 50 West Broad Street, Suite 1330, Columbus, Ohio 43215.

49. Defendant Farmers New Century Insurance Company is an Illinois company with its principal place of business located at 2245 Sequoia Drive, Aurora, Illinois 60506.

50. Defendant Illinois Farmers Insurance Company is an Illinois company with its principal place of business located at 2245 Sequoia Drive, Aurora, Illinois 60506.

51. Defendant 21st Century Insurance Company is a California company with its prinicpal place of business located at 3 Beaver Valley Rd., Wilmington, Delaware 19803.

1   52.   Security National Insurance Co. is a Delware company with its principal

2   place of business located at 5701 Stirling Road, Davie, Florida 33314.

3   53.   21st Century Centennial Insurance Co is a Pennsylvania company with its

4   principal place of business located at 3 Beaver Valley Rd., Wilmington, Delaware

5   19803.

6   54.   Bristol West Preferred Insurance. Co. is an entity of unknown origin with

7   its principal place of business, on information and belief, being located at 900 S Pine

8   Island Road, Suite 600, Plantation, Florida 33324.

9   55.   Mid-Century Insurance Company is a California company with its principal

10  place of business located at 6301 Owensmouth Ave., Woodland Hills, California 91367.

11  56.   Foremost Property and Casualty Company is a Michigan company with its

12  principal place of business located at 5600 Beech Tree Lane, Caledonia, Michigan

13  49316.

14  57.   21st Century Premier Insurance Co. is a Pennsylvania company with its

15  principal place of business located at 3 Beaver Valley Road, Wilmington, Delaware

16  19803.

17  58.   Bristol West Insurance Co. is an Ohio company with its principal place of

18  business located at 900 S Pine Island Road, Suite 600, Plantation, FL 33324.

19  59.   21st Century North America Insurance Co is a New York company with its

20  principal place of business located at 3 Beaver Valley Road, Wilmington Delaware

21  19803.

22  60.   21st Century Indemnity Insurance Company is a Pennsylvania company

23  with its principal place of business located at 3 Beaver Valley Road, Wilmington,

24  Delaware 19803.

25  61.   21st Century Preferred Insurance Company is a Pennsylvania company with

26  its principal place of business located at 3 Beaver Valley Road, Wilmington, Delaware

27  19803.

28

16

THIRD AMENDED COMPLAINT

62.    Fire Insurance Exchange is a California company with its principal place of business located at 4680 Wilshire Boulevard, Los Angeles, California 90010.

63.    Foremost Signature Insurance Company is a Michigan company with its principal place of business located at 5600 Beech Tree Lane, Caledonia, Michigan 49316.

64.    Complete diversity exists between the parties.

### MAO / MA Plans

65.    The following entities are MAO/MA Plans which Plaintiffs have assignments for that have directly contracted with CMS to provide Medicare Part C benefits: Connecticare, Inc., Health Insurance Plan of Greater New York, Group Health, Inc., Florida Health Care Plus, Network Health Home Insurance, Inc., Preferred Medical Plan, Inc., SummaCare, and Fallon Community Health Plan.[11]

66.    On information and belief, the following entities are MAOs/MA Plans assignors to Plaintiffs that: (1) are established or organized, and operated, by a health care provider, or group of affiliated health care providers; (2) provide a substantial proportion of the health care items and services under a Medicare Part C contract directly through the provider or affiliated group of providers; and (3) share, directly or indirectly, substantial financial risk with respect to the provision of such items and services and have at least a majority financial interest in the entity: Alianza Profesional de Cuidado Medico, Inc., Arse, Inc., Asomante Medical Group, Inc., Broward Primary Partners, LLC, Centro Medico de Salinas, Inc., Corporacion Puerttorriquena de Salud, Inc., Family Medicine Group, Inc., First Medical Center, Inc., Grupo de Cuidado

---

[11] At the time of this writing Connecticare, Inc., Health Insurance Plan of Greater New York, Group Health, Inc., Network Health Home Insurance, Inc., SummaCare, and Fallon Community Health Plan were all listed on the monthly MA Contract Directory as entities that contract directly with CMS. Upon information and belief, Florida Health

### THIRD AMENDED COMPLAINT

Medico Integral, Inc., Grupo Medico Aliado Del Noreste, Inc., Grupo Medico del Noreste, Inc., Grupo Medico del Yunque, Inc., Healthcare Advisors Services, Inc., Healthcare Alliance Group, Inc., Hygea Health Holdings, Inc., Intervalley Health Plan, Inc., Medico-Caribe CSP, Inc., Medical IPA of the Palm Beaches, Inc., Miami Institute for Joint Reconstruction, OrthoNow, LLC, Physician Access Urgent Care Group, LLC, PDP Health Management, Inc., Physicians HMO (IPA 951), Plum Healthcare Group, LLC, Policlinicas Medicas Asociadas, Inc., Ponce Advance Medical Group, Inc., Preferred Primary Care, LLC, Primary Physicians Medical Services, LLC, Healthy Partners / Risk Watchers, Inc., Southern Healthcare Group, Inc., Suncoast Provider Network, Inc., Transatlantic Healthcare, Trinity Physicians, LLC, University Health Care MSO, Inc., Verimed IPA, LLC, Choice One Medical Group, LLC, Professional Health Choice, and MCCI Group Holdings, LLC. The above entities are also considered to be coordinated care plans, which includes a network of providers that are under contract or arrangement to deliver the benefit package approved by CMS under Medicare Part C. Texas Physicians and Reliance ACO, LLC are not MA Plans in the sense that ACOs deal with traditional Medicare and do not contract with CMS in the same sense as MAOs/MA Plans, i.e. via Medicare Advantage. They do have standing under the MSP laws as discussed, *infra*.

## STANDING

67.     Plaintiffs have standing to bring these causes of action because certain MAOs/MA Plans, whether HMOs, MSOs, ACOs, IPAs, et al[12], (collectively, the

---

Care Plus and Preferred Medical Plan, Inc. were: a) both HMOs; b) listed on the same list by CMS. Their recovery rights have been assigned to Plaintiffs.

[12]A Management Service Organization ("MSO") is an organization owned by a group of physicians, a physician hospital joint venture, or investors in conjunction with physicians. MSOs generally provide practice management and administrative support services to individual physicians and group practices. An independent practice association ("IPA") is an association of independent physicians, or other organization

"assignors"), assigned their rights of reimbursement, recovery and subrogation to Plaintiffs. Plaintiffs own the assignors' claims for reimbursement and recovery, as well as their subrogation rights, including the right to pursue recovery of medical claims or payments, amounts owed on unpaid bills, and expenses paid by the assignors on behalf of their beneficiaries from entities liable as primary payers (or entities that received payment from primary payers).

68. All of these assignments are valid and binding contracts.

69. The underlying assignments, alleged in some detail below, allow assigned all legal rights of recovery and reimbursement for health care services and Medicare benefits provided by health care organizations that administer Medicare benefits for beneficiaries under Medicare; whether said rights arise from (i) contractual agreements, such as participation and network agreements with capitation and risk sharing arrangements, and/or (ii) state and federal laws that provide for the reimbursement of conditional payments made by the assignor health plans, including the right to recover claims for health care services billed on a fee-for-service basis.

70. The MSP statute provides for "a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with paragraphs (1) and (2)(A)." 42 U.S.C. § 1395y(b)(3). This private right of action does not restrict who may bring it, and courts routinely hold that non-government and non-MAO parties may bring it. *See, e.g., Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 279, 284-87 (6th Cir. 2011) (allowing a patient and medical provider, not an MAO, to bring MSP private right of action against primary plan using the private right of action);

---

that contracts with independent physicians, and provides services to managed care organizations on a negotiated per capita rate, flat retainer fee, or negotiated fee-for-service basis. An Accountable Care Organization ("ACO") is groups of doctors,

**THIRD AMENDED COMPLAINT**

*O'Connor v. Mayor & City Council of Baltimore*, 494 F. Supp. 2d 372, 374 (D. Md. 2007) (allowing MSP private cause of action by Medicare beneficiary). This includes not just, for example HMOs, that contract directly with CMS, but other "first tier" or "downstream entities" such as MSOs and IPAs.

The regulations make it clear that "[t]he MA organization will exercise the same rights to recover from a primary plan, entity, or individual that the Secretary exercises under the MSP regulations[.]" 42 C.F.R. § 422.108(f). And, MA organization[13] is defined by statute. 42 U.S.C. § 1395w-21(a). Specifically, an MA organization "may be … plans offered by provider-sponsored organizations (as defined in section 1395w-25(d) of this title)[.]" *Id.* § 1395w-21(a)(2)(A)(i). And, a "'provider-sponsored organization' means a public or private entity-- (A) that is established or organized, and operated, by a health care provider, or group of affiliated health care providers, (B) that provides a substantial proportion … of the health care items and services under the contract under this part directly through the provider or affiliated group of providers, and (C) with respect to which the affiliated providers share, directly or indirectly, substantial financial risk with respect to the provision of such items and services and have at least a majority financial interest in the entity." 42 U.S.C.A. § 1395w-25(d)(1)(A–C). In other words, an MA organization (or MAO/MA Plan as used in the briefing) is any established provider or group of affiliated providers that provide Medicare Part C benefits and take on the risks associated with providing that care.

71. This definition of an MA plan is similarly incorporated in the regulations, which state that "[a]n MA plan may be a coordinated care plan" and that "[a]

hospitals, and other health care providers, who come together voluntarily to give coordinated high-quality care to their Medicare patients.
[13] The original name of a MAO was called a "Medicare+Choice" organization. See 42 U.S.C. § 1395w-21(a). However, in 2003, Congress renamed "Medicare+Choice" to "Medicare Advantage" and "MA" as part of the Medicare Prescription Drug, Improvement, and Modernization Act of 2003. PL 108–173, December 8, 2003, 117 Stat

20

**THIRD AMENDED COMPLAINT**

1  coordinated care plan is a plan that includes a network of providers that are under
2  contract or arrangement with the organization to deliver the benefit package approved by
3  CMS." 42 C.F.R. § 422.4(a)(1).[14] MA Plans, by definition, include the network of
4  providers under contract to deliver Medicare Part C benefits. The statute considers them
5  MA plans regardless of whether they are "downstream" or "first tier" entities such as
6  MSOs and IPAs.

7     72.  ACOs have standing as providers of healthcare in connection with
8  traditional Medicare under the MSP laws. These entities work directly with Medicare.
9  *See* https://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/ACO/. As per
10 CMS, ACOs "give coordinated high-quality care to their Medicare patients."
11 Accordingly, if an ACO incurs a medical expense that should have been covered by a
12 primary payor it is entitled to reimbursement under the MSP laws.[15]

## ASSIGNMENTS

13    73.  On 6/19/2017, Fallon Community Health Plan, Inc. entered into an
14 agreement with MSP Recovery LLC, irrevocably assigning its right to recover
15 conditional payments under the MSP law. The assignment contract was executed by
16 individuals of majority, of sound mind, and with legal authority to bind the respective
17 parties. The assignment was entered into under Massachusetts law. By the terms of the

---

21 2066 ("[A]ny reference to 'Medicare+Choice' is deemed a reference to 'Medicare
   Advantage' and 'MA'").
   [14] And "arrangement" is defined as "a written agreement between an MA organization
22 and a provider or provider network, under which— (1) The provider or provider network
23 agrees to furnish for a specific MA plan(s) specified services to the organization's MA
   enrollees; (2) The organization retains responsibilities for the services; and (3) Medicare
24 payment to the organization discharges the enrollee's obligation to pay for the services."
   42 C.F.R. § 422.2.
25 [15] Unless, specifically discussing Medicare Advantage laws as opposed to MSP laws,
26 generally, for brevity, the Complaint will simply refer to MAOs/MA Plans instead of the
   unwieldly "and ACOs and other related entities." Except for when dealing expressly
27 with Medicare Advantage laws, specifically, the reader can assume that ACOs and other
28 entities under the MSP laws are meant to be included when referencing MAOs/MA
   Plans in the Complaint, generally.

21

**THIRD AMENDED COMPLAINT**

1  contract, the parties are required to maintain confidentiality relating to the existence of
2  the assignment contract. On 6/20/2017, MSP Recovery, LLC entered into an agreement
3  with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover
4  conditional payments under the MSP law as assigned from Fallon Community Health
5  Plan, Inc. This assignment was made pursuant to the Series 17-04-631 agreement. This
6  second assignment contract was executed by individuals of majority, of sound mind, and
7  with legal authority to bind the respective parties. This second assignment was entered
8  into under Delaware law. Consideration was given between each party in executing
9  these assignments.

10      74.    On 12/13/2016, Plum Healthcare Group, LLC entered into an agreement
11 with MSP Recovery, LLC, irrevocably assigning its right to recover conditional
12 payments under the MSP law. The assignment contract was executed by individuals of
13 majority, of sound mind, and with legal authority to bind the respective parties. The
14 assignment was entered into under Florida law. By the terms of the contract, the parties
15 are required to maintain confidentiality relating to the existence of the assignment
16 contract. On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP
17 Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional
18 payments under the MSP law as assigned from Plum Healthcare Group, LLC. This
19 assignment was made pursuant to the Series 16-10-504 agreement. This second
20 assignment contract was executed by individuals of majority, of sound mind, and with
21 legal authority to bind the respective parties. This second assignment was entered into
22 under Delaware law. Consideration was given between each party in executing these
23 assignments.

24      75.    On 5/12/2017, SummaCare, Inc. entered into an agreement with MSP
25 Recovery, LLC, irrevocably assigning its right to recover conditional payments under
26 the MSP law. The assignment contract was executed by individuals of majority, of
27 sound mind, and with legal authority to bind the respective parties. The assignment was
28 entered into under Ohio law. By the terms of the contract, the parties are required to

**THIRD AMENDED COMPLAINT**

maintain confidentiality relating to the existence of the assignment contract. On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from SummaCare, Inc. This assignment was made pursuant to the Series 16-11-509 agreement. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

76.   On 4/7/2016, Verimed IPA, LLC entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Verimed IPA, LLC. This assignment was made pursuant to the Series 15-09-108 agreement. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

77.   On 12/3/2014, MCCI Group Holdings, LLC ("MCCI") entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract. On 2/20/2015, MSP Recovery, LLC entered into an agreement with MSPA Claims 1, LLC, irrevocably assigning its right to recover conditional

**THIRD AMENDED COMPLAINT**

payments under the MSP law as assigned from MCCI Group Holdings, LLC. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Florida law. Consideration was given between each party in executing these assignments.

78.     On 8/28/2015, Healthcare Advisors Services, Inc. entered into an agreement with MSP Recovery, LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract. On 6/12/2017, MSP Recovery, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Healthcare Advisors Services, Inc. This assignment was made pursuant to the Series 15-08-27 agreement. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

79.     On 6/25/2015, Professional Health Choice entered into an agreement with MSPA Claims XI, LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. By the terms of the contract, the parties are required to maintain confidentiality relating to the existence of the assignment contract. On 1/21/2016, MSPA Claims XI, LLC entered into an agreement with MSP Recovery Services, LLC, irrevocably assigning its right to recover conditional payments under the

MSP law as assigned from Professional Health Choice. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Florida law. On 1/21/2016, MSP Recovery Services, LLC entered into an agreement with MSPA Claims 1, LLC, irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Professional Health Choice and MSPA Claims XI, LLC. This third assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This third assignment was entered into under Florida law. Consideration was given between each party in executing these assignments.

80. On 4/27/2017, Reliance ACO, LLC entered into an agreement with MSP Recovery Claims, Series LLC, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. Consideration was given between each party in executing these assignments. On June 12, 2017, within MSP Recovery Claims Series, LLC, pursuant to the 17-02-564 agreement, further assigned, its rights to receive conditional payments as assigned from Reliance ACO, LLC. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Delaware law. Consideration was given between each party in executing these assignments.

81. On 4/15/2014, Florida Health Care Plus, Inc. entered into an agreement with La Ley Recovery Systems, Inc., irrevocably assigning its right to recover

25

**THIRD AMENDED COMPLAINT**

conditional payments under the MSP law.[16] The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under Florida law. Consideration was given between each party in executing these assignments. On 2/20/2015 Lay Ley Recovery Systems, Inc. entered into an agreement with MSPA Claims 1, LLC irrevocably assigning its right to recover conditional payments under the MSP law as assigned from Florida Health Care Plus, Inc. This second assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. This second assignment was entered into under Florida law. Consideration was given between each party in executing these assignments. On 6/1/2016 a Settlement Agreement was entered into by La Ley Recovery Systems, Inc., MSP Recovery, LLC, MSPA Claims 1, LLC, and the Florida Department of Financial Services as the Receiver of Florida Healthcare Plus, Inc. on behalf of Florida Healthcare Plus, Inc. Such agreement confirmed the ownership of all of Florida Healthcare Plus, Inc.'s claims relating to conditional payments under the MSP law to MSPA Claims 1, LLC, ultimately. This Settlement Agreement was approved by the Leon County Court of Florida on 6/14/2016.

82. On 03/20/2018, EmblemHealth Services Company, LLC entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 16-08-483, irrevocably assigning its right to recover conditional payments under the MSP law. The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties. The assignment was entered into under New York law. Consideration was given between each party in executing these assignments.

---

[16] Section 1.1 of the FHCP-La Ley Recovery Assignment Agreement between FHCP and La Ley Recovery provides as follows: [b]y way of this agreement, [FHCP] appoints, directs, and otherwise assigns all of [FHCP's] rights as it pertains to the rights pursuant

83.    On 03/20/2018, Health Insurance Plan of Greater New York entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 16-08-483, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under New York law.  Consideration was given between each party in executing these assignments.

84.    On 03/20/2018, Group Health Inc., entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 16-08-483, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under New York law. Consideration was given between each party in executing these assignments.

85.    On 03/20/2018, Connecticare, Inc. entered into an agreement with MSP Recovery Claims, Series LLC, pursuant to Series 15-09-157, irrevocably assigning its right to recover conditional payments under the MSP law.  The assignment contract was executed by individuals of majority, of sound mind, and with legal authority to bind the respective parties.  The assignment was entered into under Connecticut law. Consideration was given between each party in executing these assignments. Emblem Health Services Company, LLC, Health Insurance Plan of Greater New York, Group Health, Inc., and Connecticare, Inc. are referred to throughout this Complaint as "Emblem Health."

to any plan, State or Federal statute whatsoever directly and/or indirectly for any its members and/or plan participants.

**THIRD AMENDED COMPLAINT**

## TRACING[17]

86.     For Farmers Insurance Exchange:  An Ohio resident named Mr. J.D. was receiving Medicare benefits from an MAO/MA Plan, SummaCare, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. J.D. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. SummaCare paid for / provided those medical items and services. However, at the time of the accident Mr. J.D. also possessed a No-Fault Policy with Farmers Insurance Exchange, which required payment of medical expenses up to a pre-specified policy limit.  Farmers Insurance Exchange, however, did not pay or reimburse SummaCare for those expenses within the required time frame, as required of a primary payer. Additionally, Farmers Insurance Exchange did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws.  Thus, as a matter of law, Farmers Insurance Exchange is liable for double damages.

87.     For Farmers Insurance Company of Columbus, Inc.:  An Ohio resident named Mr. F.B was receiving Medicare benefits from an MAO/MA Plan, SummaCare, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. F.B was involved in an automobile accident that required medical

---

[17] As per this Court's Order regarding the Second Amended Complaints, the Court ordered the parties to engage in jurisdictional discovery regarding tracing in order to ascertain the proper parties in this case.  The parties did so.  These Defendant entities are the Defendant entities under the Farmers umbrella which Defendants confirmed to Plaintiffs during jurisdictional discovery. The exception is the beneficiary in connection to Farmers New Century Insurance Company.  Currently, there are still some ninety-four beneficiaries which Defendants have not responded to Plaintiffs about.  Accordingly, Plaintiffs reserve the right to add/drop parties. Plaintiffs traced this beneficiary to that defendant using databases, but Defendants have yet to confirm this beneficiary. Plaintiffs reserve the right to amend as to this named defendant and beneficiary should Defendants supplement their response.

**THIRD AMENDED COMPLAINT**

services arising out of the use, maintenance, and/or operation of a motor vehicle. SummaCare paid for / provided those medical items and services. However, at the time of the accident Mr. F.B also possessed a No-Fault Policy with Farmers Insurance Company of Columbus, Inc., which required payment of medical expenses up to a pre-specified policy limit. Farmers Insurance Company of Columbus, Inc. however, did not pay or reimburse SummaCare for those expenses within the required time frame, as required of a primary payer. Additionally, Farmers Insurance Company of Columbus, Inc. did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Farmers Insurance Company of Columbus, Inc. is liable for double damages.

88.    For Mid-Century Insurance Company: A Utah resident named Ms. M.C. was receiving Medicare benefits from an MAO/MA Plan, SummaCare, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. M.C. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. SummaCare paid for / provided those medical items and services. However, at the time of the accident Ms. M.C. also possessed a No-Fault Policy with Mid-Century Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Mid-Century Insurance Company, however, did not pay or reimburse SummaCare for those expenses within the required time frame, as required of a primary payer. Additionally, Mid-Century Insurance Company did not challenge SummaCare's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Mid-Century Insurance Company is liable for double damages.

89.    For Farmers New Century Insurance Company: A New York resident named Ms. E.R.C. was receiving Medicare benefits from an MAO/MA Plan, Emblem Health, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. E.R.C. was involved in an automobile accident that required medical

29

**THIRD AMENDED COMPLAINT**

services arising out of the use, maintenance, and/or operation of a motor vehicle. Emblem Health paid for / provided those medical items and services. However, at the time of the accident Ms. E.R.C. also possessed a No-Fault Policy with Farmers New Century Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Farmers New Century Insurance Company, however, did not pay or reimburse Emblem Health for those expenses within the required time frame, as required of a primary payer. Additionally, Farmers New Century Insurance Company did not challenge Emblem Health's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Farmers New Century Insurance Company is liable for double damages.

90. For Foremost Property and Casualty Company: A Massachusetts resident named Ms. H.R. was receiving Medicare benefits from an MAO/MA Plan, Fallon Community Health Plan, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. H.R. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Fallon Community Health Plan paid for / provided those medical items and services. However, at the time of the accident Ms. H.R. also possessed a No-Fault Policy with Foremost Property and Casualty Company, which required payment of medical expenses up to a pre-specified policy limit. Foremost Property and Casualty Company, however, did not pay or reimburse the Fallon Community Health Plan for those expenses within the required time frame, as required of a primary payer. Additionally, Foremost Property and Casualty Company did not challenge Fallon Community Health Plan's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Foremost Property and Casualty Company is liable for double damages.

91. For Security National Insurance Company: A Florida resident named Mr. M.F. was receiving Medicare benefits from an MAO/MA Plan, Florida Health Care

**THIRD AMENDED COMPLAINT**

Plus, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. M.F. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Florida Health Care Plus paid for / provided those medical items and services. However, at the time of the accident Mr. M.F. also possessed a No-Fault Policy with Security National Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Security National Insurance Company, however, did not pay or reimburse Florida Health Care Plus for those expenses within the required time frame, as required of a primary payer. Additionally, Security National Insurance Company did not challenge Florida Health Care Plus's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Security National Insurance Company is liable for double damages.

92.     Also for Security National Insurance Company: A Florida resident named Mr. S.F. was receiving Medicare benefits from an MAO/MA Plan, Health Care Advisor Services, Inc., whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. S.F. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Health Care Advisor Services, Inc. paid for / provided those medical items and services. However, at the time of the accident Mr. S.F. also possessed a No-Fault Policy with Security National Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Security National Insurance Company, however, did not pay or reimburse Health Care Advisor Services, Inc. for those expenses within the required time frame, as required of a primary payer. Additionally, Security National Insurance Company did not challenge Health Care Advisor Services, Inc.'s payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Security National Insurance Company is liable for double damages.

**THIRD AMENDED COMPLAINT**

93.    For 21st Century Centennial Insurance Company:  A Florida resident named Mr. I.B. was receiving Medicare benefits from an MAO/MA Plan, Florida Health Care Plus, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. I.B. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Florida Health Care Plus paid for / provided those medical items and services. However, at the time of the accident Mr. I.B. also possessed a No-Fault Policy with 21st Century Centennial Insurance Company, which required payment of medical expenses up to a pre-specified policy limit.  21st Century Centennial Insurance Company, however, did not pay or reimburse Florida Health Care Plus for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century Centennial Insurance Company did not challenge Florida Health Care Plus's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Centennial Insurance Company is liable for double damages.

94.    Also, for 21st Century Centennial Insurance Company:  A Florida resident named Ms. V.J was receiving Medicare benefits from an MAO/MA Plan, Florida Health Care Plus, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. V.J was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Florida Health Care Plus paid for / provided those medical items and services. However, at the time of the accident Ms. V.J also possessed a No-Fault Policy with 21st Century Centennial Insurance Company, which required payment of medical expenses up to a pre-specified policy limit.  21st Century Centennial Insurance Company, however, did not pay or reimburse Florida Health Care Plus for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century Centennial Insurance Company did not challenge Florida Health Care Plus's payment / provision of

**THIRD AMENDED COMPLAINT**

those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Centennial Insurance Company is liable for double damages.

95. For 21st Century Indemnity Insurance Company: A Florida resident named Mr. H.H. was receiving Medicare benefits from an MAO/MA Plan, MCCI, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. H.H. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. MCCI paid for / provided those medical items and services. However, at the time of the accident Mr. H.H. also possessed a No-Fault Policy with 21st Century Indemnity Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. 21st Century Indemnity Insurance Company, however, did not pay or reimburse the MCCI for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century Indemnity Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Indemnity Insurance Company is liable for double damages.

96. For 21st Century Preferred Insurance Company: A Florida resident named Mr. E.R. was receiving Medicare benefits from an MAO/MA Plan, MCCI, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. E.R. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. MCCI paid for / provided those medical items and services. However, at the time of the accident Mr. E.R. also possessed a No-Fault Policy with 21st Century Preferred Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. 21st Century Preferred Insurance Company, however, did not pay or reimburse MCCI for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century

33

**THIRD AMENDED COMPLAINT**

Preferred Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Preferred Insurance Company is liable for double damages.

97. For Foremost Signature Insurance Company: A Florida resident named Ms. W.W. was receiving Medicare benefits from an MAO/MA Plan, MCCI, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. W.W. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. MCCI paid for / provided those medical items and services. However, at the time of the accident Ms. W.W. also possessed a No-Fault Policy with Foremost Signature Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Foremost Signature Insurance Company, however, did not pay or reimburse MCCI for those expenses within the required time frame, as required of a primary payer. Additionally, Foremost Signature Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Foremost Signature Insurance Company is liable for double damages.

98. For Bristol West Insurance Company: A Florida resident named Ms. E.B. was receiving Medicare benefits from an MAO/MA Plan, MCCI, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. E.B. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. MCCI paid for / provided those medical items and services. However, at the time of the accident Ms. E.B. also possessed a No-Fault Policy with Bristol West Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Bristol West Insurance Company, however, did not pay or reimburse MCCI for those expenses within the required time

**THIRD AMENDED COMPLAINT**

frame, as required of a primary payer. Additionally, Bristol West Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Bristol West Insurance Company is liable for double damages.

99.     For 21st Century North America Insurance Company: A Florida resident named Mr. R.M. was receiving Medicare benefits from an MAO/MA Plan, MCCI, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. R.M. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. MCCI paid for / provided those medical items and services. However, at the time of the accident Mr R.M. also possessed a No-Fault Policy with 21st Century North America Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. 21st Century North America Insurance Company, however, did not pay or reimburse MCCI for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century North America Insurance Company did not challenge MCCI's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century North America Insurance Company is liable for double damages.

100.   For 21st Century Insurance Company: A California resident named Mr. C.B. was receiving Medicare benefits from an MAO/MA Plan, Plum Health Care Group, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. C.B. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Plum Health Care Group paid for / provided those medical items and services. However, at the time of the accident Mr. C.B. also possessed a No-Fault Policy with 21st Century Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. 21st Century Insurance Company, however, did not pay or reimburse the

**THIRD AMENDED COMPLAINT**

Plum Health Care Group for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century Insurance Company did not challenge Plum Health Care Group's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Insurance Company is liable for double damages.

101. For Bristol West Preferred Insurance Company: A Michigan resident named Ms. L.S. was receiving Medicare benefits from an ACO, Reliance ACO, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Ms. L.S. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Reliance ACO paid for / provided those medical items and services. However, at the time of the accident Ms. L.S. also possessed a No-Fault Policy with Bristol West Preferred Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Bristol West Preferred Insurance Company, however, did not pay or reimburse Reliance ACO for those expenses within the required time frame, as required of a primary payer. Additionally, Bristol West Preferred Insurance Company did not challenge Reliance ACO's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Bristol West Preferred Insurance Company is liable for double damages.

102. For 21st Century Premier Insurance Company: A Michigan resident named Mr. R.D. was receiving Medicare benefits from an ACO, Reliance ACO, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. R.D. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Reliance ACO paid for / provided those medical items and services. However, at the time of the accident Mr. R.D. also possessed a No-Fault Policy with 21st Century Premier Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. 21st Century

**THIRD AMENDED COMPLAINT**

Premier Insurance Company, however, did not pay or reimburse Reliance ACO for those expenses within the required time frame, as required of a primary payer. Additionally, 21st Century Premier Insurance Company did not challenge Reliance ACO's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, 21st Century Premier Insurance Company is liable for double damages.

103. For Fire Insurance Exchange: A Michigan resident named Mr. T.T. was receiving Medicare benefits from an ACO, Reliance ACO, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. T.T. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Reliance ACO paid for / provided those medical items and services. However, at the time of the accident Mr. T.T. also possessed a No-Fault Policy with Fire Insurance Exchange, which required payment of medical expenses up to a pre-specified policy limit. Fire Insurance Exchange, however, did not pay or reimburse Reliance ACO for those expenses within the required time frame, as required of a primary payer. Additionally, Fire Insurance Exchange did not challenge Reliance ACO's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Fire Insurance Exchange is liable for double damages.

104. For Illinois Farmers Insurance Company: A Minnesota resident named Mr. J.B. was receiving Medicare benefits from an MAO/MA Plan, Verimed IPA, whose right to recover under the MSP Act has been assigned to at least one of the Plaintiffs. Mr. J.B. was involved in an automobile accident that required medical services arising out of the use, maintenance, and/or operation of a motor vehicle. Vermed IPA paid for / provided those medical items and services. However, at the time of the accident Mr. J.B. also possessed a No-Fault Policy with Illinois Farmers Insurance Company, which required payment of medical expenses up to a pre-specified policy limit. Illinois

**THIRD AMENDED COMPLAINT**

Farmers Insurance Company, however, did not pay or reimburse Verimed IPA for those expenses within the required time frame, as required of a primary payer. Additionally, Illinois Farmers Insurance Company did not challenge Verimed IPA's payment / provision of those medical expenses within the required time, as required under the Medicare laws. Thus, as a matter of law, Illinois Farmers Insurance Company is liable for double damages.

### REPRESENTATIVE FACTS

105. Numerous Medicare beneficiaries, under the MSP laws, were members of MAOs/MA Plans who have assigned their rights to Plaintiffs herein ("Medicare Beneficiaries"). These Medicare Beneficiaries were also insured under automobile insurance policies issued by Defendants. These Medicare Beneficiaries' policies with Defendants provided for coverage of medical expenses related to injuries resulting in medically necessary services and/or supplies stemming from automobile accidents.

106. The Medicare Beneficiaries were involved in automobile accidents in the United States. As a direct and proximate result of these automobile accidents, the Medicare Beneficiaries required medical treatment and/or supplies. The bills for the medical treatment and/or supplies were required to be paid by Defendants. Defendants failed to pay or reimburse the Medicare Beneficiaries' MAOs/MA Plans for the payments made by the MAOs/MA Plans that were required to be paid by them as a result of said automobile accidents.

107. Defendants were aware of the accidents and even assigned claim numbers to said automobile accidents. Defendants reported its responsibility as a required reporting entity ("RRE") to CMS but nevertheless failed to pay and/or properly reimburse the Medicare Beneficiaries' MAOs/MA Plans, Full Risk Payers and/or their assignee(s).

108. The medical services and/or supplies rendered to the Medicare beneficiaries were charged to the beneficiaries' MAOs/MA Plans. The MAOs/MA Plans, Full Risk

**THIRD AMENDED COMPLAINT**

Payers and/or their assignee(s) suffered a monetary injury because of Defendants's failures to pay or otherwise reimburse the MAOs/MA Plans, Full Risk Payers and/or their assignee(s).

109.   In addition to reporting the claims to CMS, Defendants reported automobile accidents to databases such as ISO, a national property/casualty claims database. Defendants never notified the Medicare Beneficiaries' MAOs/MA Plans of the automobile insurance companies' primary payer responsibility pursuant to 42 C.F.R. § 411.25. To date, Defendants failed to provide details of their primary payer responsibility to Plaintiffs.

110.   The basis of allegations in paragraphs herein stem from Plaintiffs' review of claims data.  Plaintiffs have identified medical claims whereby Plaintiffs' beneficiaries were involved in automobile-related accidents and experienced medical expenses as a result.  Of those claims, Plaintiffs have been able to determine that those Medicare beneficiaries possessed automobile insurance policies with Defendants containing no-fault provisions.  Thus, there is reasonable evidence of overlapping coverage and evidence that the payments were made by a Medicare Part C payer instead of the primary payer, Defendants herein.  And, based on the nature of the medical treatment and Defendants' failure to reimburse Plaintiffs' MAOs/MA Plans for those medical expenses, the data supports the good-faith allegation that Defendants' failure to pay for claims as primary payers is widespread and systematic.  In fact, Defendants have a practice and course of conduct to not properly pay and/or of fail to reimburse the secondary payer, such as Plaintiffs and the Class Members.  Full details of those claims, i.e., specific payments, coverage determinations, etc., are in Defendants' possession and will be located and assessed through the process of discovery.

111.   For the purposes of alleging a plausible claim under Fed. R. Civ. P. 8, Plaintiffs are not required to plead with particularity any specific underlying claim that was not reimbursed by Defendants, i.e., the who, what, where, and when.  That sort of

**THIRD AMENDED COMPLAINT**

information is, by definition, only required for claims involving fraud or deceit. *See* Fed. R. Civ. P. 9(b). And, considering the factual allegations regarding those claims identified by Plaintiffs were located using various databases and claims data, there are sufficient alleged facts to support the elements of a claim under the Medicare Secondary Payer laws.

112. Plaintiffs have data for hundreds of insureds of various Farmers entities including similar facts as alleged in the above. Upon the order of this Court, the parties met and conferred to conduct jurisdictional discovery to ascertain the correct Defendants in this case. After meeting and conferring, the above-listed defendants and relevant beneficiaries were confirmed by Defendants, and each of them.

113. This data shows hundreds of insureds/Medicare beneficiaries, who were insured by one of the MAOs/MA Plans who assigned their MSP recovery rights to Plaintiffs, who also were involved in automobile accidents while being covered by a No-Fault Insurance policy issued by a Farmers entity and/or were involved in accident-related settlements with a Farmers entity. These hundreds of examples of claims are just the tip of the iceberg, i.e., only those claims that a Farmers entity voluntarily disclosed to the databases. There are likely many thousands of claims, related to the Assignors alleged above. However, the full details of those claims are only in the Defendants' possession and will need to be identified through discovery.

## CLASS DEFINITION

114. The putative class (hereinafter referred to as "Class Members") is defined as:

> All non-governmental organizations, and/or their assignees, that provide benefits under Medicare, in the United States of America and its territories, who made payments for automobile accident-related medical items and services on behalf of their beneficiaries, for which the Defendants had provided no-fault insurance coverage related to

**THIRD AMENDED COMPLAINT**

the medical items and services involving automobile accidents, and
for which the Defendants have not reimbursed in full or in part.

This class definition excludes (a) Defendants, their officers, directors,
management, employees, subsidiaries, and affiliates; and (b) any
judges or justices involved in this action and any members of their
immediate families.

## CAUSES OF ACTION

115.   The claims asserted in this Complaint arise from Medicare Services paid for
by the Class Members to treat the injuries suffered by their enrollees as a direct result of
automobile accidents.

116.   In addition to having been enrollees with the Class Members at the time of
automobile accidents, Class Members' enrollees were also covered by a no-fault and/or
medical payments policy issued by Defendants.

117.   Defendants failed to make primary payment and/or appropriately reimburse
the Class Members.

118.   Defendants issued no-fault and/or medical payments policies and collected
premiums.

119.   The Class Members advanced Medicare payments on behalf of their
enrollees for medical treatment and supplies for which Defendants were responsible as
primary payers. Defendants were primarily responsible as each enrollee was covered by
the respective automobile insurance policies issued by Defendants; instead Class
Members paid for the enrollees' Medicare Services when Defendants had the primary
obligation to do so. Accordingly, Plaintiffs seek damages on behalf of themselves and
similarly situated MAOs/MA Plans and their assignees for Defendants' violation of the
MSP provisions and direct right of recovery for breach of contract.

120.   The MAOs/MA Plans involved in this class action discharged their

41

**THIRD AMENDED COMPLAINT**

obligations and paid the medical bills for the Medicare Services rendered to their enrollees, which were related to automobile accidents. *See* 42 U.S.C. § 1395w-27(f); 42 C.F.R. §§ 422.214 and 422.520. Plaintiffs' rights, and those of others similarly situated, arise from the payments made by MAOs/MA Plans as secondary payers, for which Defendants were primarily responsible and should have themselves paid, or properly reimbursed the MAOs/MA Plans for their payments. *See* 42 U.S.C. § 1395y(b)(3)(A); 42 U.S.C. § 1395y(b)(2)(B)(ii).

## COUNT I

### Private Cause of Action Under 42 U.S.C. § 1395y(b)(3)(A)

121. Plaintiffs incorporate by reference paragraphs 1-120 of this Complaint.

122. Plaintiffs assert a private cause of action pursuant to 42 U.S.C. § 1395y(b)(3)(A) on behalf of themselves and all similarly-situated MAOs/MA Plans.

123. The elements of a cause of action under 42 U.S.C. § 1395y(b)(3)(A) are: (1) the Defendants were primary payers for a claim covered by Medicare; (2) the Defendants did not make the primary payment or reimburse the Medicare benefit provider for its payment; and (3) damages.

124. Defendants offer and sell automobile insurance policies which provide no-fault PIP, BRB, or Med Pay coverage provisions. These policy provisions are designed to pay for medical expenses arising out of any automobile accident regardless of fault. Accordingly, in each case Defendants were contractually obligated to be primary payers for all Medicare services instead of the Plaintiffs and the Class Members.

125. Defendants' insureds are also Medicare beneficiaries enrolled in the Class Members' plan, whose automobile accident-related Medicare Services were paid for by the Class Members, including entities that assigned their recovery to Plaintiffs, *i.e.*, those entities "that provide Medicare benefits to Medicare beneficiaries for medical services, treatment, and/or supplies under Medicare."

126. Under the MSP provisions, a payer becomes a "primary payer" when

42

**THIRD AMENDED COMPLAINT**

responsibility for payment is demonstrated. Responsibility is demonstrated by "a judgment, a payment conditioned upon the recipient's compromise, waiver, or release (whether there is a determination or admission of liability) of payment for items or services included in a claim against the primary plan or the primary plan's insured, or by other means." That last part, "by other means," can be demonstrated by the existence of a contractual obligation. In this case, the Defendants were contractually obligated to make payments for all of the Medicare Services covered by the respective insurance policies, up to the limits of coverage.

127. A number of the Defendants' insureds who had PIP, BRB, or Med Pay no-fault coverage, who were also Medicare beneficiaries, were involved in automobile accidents which resulted in the necessary and reasonable provision of Medicare Services.

128. In this case, Defendants failed to administratively appeal the MAOs/MA Plans' right to reimbursement within the administrative remedies period on a class wide basis. Defendants, therefore, are time-barred from challenging the propriety or amounts paid.

129. Pursuant to the underlying PIP, BRB, or Med Pay policy coverages, Defendants were, as primary payers, obligated to pay for those medical expenses, up to the policy limit.[18]

130. Instead, the Class Members and entities that have assigned their recovery rights to Plaintiffs paid for those items and services as part of providing Medicare benefits.

131. Those payments were conditional payments since the Defendants were, by law, primary payers under the MSP provisions. Pursuant to the MSP provisions,

---

[18] This can be demonstrated by Defendants' issuance of no-fault and Med Pay insurance to their insureds.

**THIRD AMENDED COMPLAINT**

Defendants are required to reimburse Class Members for those payments when this responsibility is demonstrated through the Defendants' no-fault and/or medical payments insurance coverage.

132. Failure to reimburse Plaintiffs and the Class Members for making payments has enabled Defendants to circumvent their responsibilities under the MSP provisions.

133. Defendants have derived substantial profits by placing the burden of financing medical treatments for their policy holders upon the shoulders of MAOs/MA Plans. Not only did the Defendants avoid having to pay for medical expenses they were otherwise obligated to pay, the Defendants took advantage of the less expensive costs passed on to Medicare patients.

134. Defendants have profited from their refusal to comply with the MSP provisions.

135. Pursuant to 42 U.S.C. § 1395y(b)(3)(A), Plaintiffs and the Class Members are entitled to double damages from Defendants due to their failure to provide primary payment for those claims which the Defendants were primary payers and for which the Defendants have not provided appropriate reimbursement to the Plaintiffs or Class Members.

## COUNT II

**Direct Right of Recovery Pursuant to 42 C.F.R. § 411.24(e) for Breach of Contract**

136. Plaintiffs incorporate by reference paragraphs 1-135 of this Complaint.

137. MAOs/MA Plans are subrogated the right to recover primary payment from Defendants for the Defendants' breach of contract with their insured, pursuant to the MSP provisions. Specifically, Defendants were contractually obligated to pay for medical expenses and items arising out of an automobile accident, and Defendants failed to meet that obligation. This obligation was, instead, fulfilled by the Plaintiffs and other Class Members. Under the MSP provisions, Plaintiffs are permitted to subrogate the

enrollee/insured's right of action against the Defendants. *See* 42 C.F.R. § 411.26.

138. Plaintiffs complied with any conditions precedent to the institution of this action, to the extent applicable.

139. Defendants failed and/or refused to make complete payments of the no-fault benefits as required by their contractual obligations.

140. Defendants failed to pay each enrollee's covered losses, and Defendants had no reasonable proof to establish that they were not responsible for the payment.

141. Defendants' failure to pay the medical services and/or items damaged Plaintiffs and the Class Members as set forth herein. Plaintiffs and the Class Members processed medical expenses and are entitled to recover up to the statutory policy limits for each enrollee's medical expenses related to the subject automobile accidents, pursuant to their agreements with CMS and the provider of services.

## CLASS ALLEGATIONS

### I.    National Damages and Injunctive Relief Classes

142. This matter is brought as a class action pursuant to Federal Rule of Civil Procedure 23, on behalf of all Class Members or their assignees who paid for their beneficiaries' medical expenses associated with an automobile accident, when Defendants should have made those payments as primary payers and should have reimbursed the Class Members.

143. As discussed in this class action Complaint, Defendants have failed to provide primary payment and/or appropriately reimburse the Class Members for money they were statutorily required to pay under the MSP provisions. This failure to reimburse applies to Plaintiffs, as the rightful assignees of those organizations that assigned their recovery rights to Plaintiffs, and to all Class Members. Class action law has long recognized that, when a company engages in conduct that has uniformly harmed a large number of claimants, class resolution is an effective tool to redress the

**THIRD AMENDED COMPLAINT**

harm.  This case, thus, is well suited for class-wide resolution.

144.  Class Members have been unlawfully burdened with paying for the medical costs of their beneficiaries when the law explicitly requires Defendants to make such payments.  The Medicare Act and its subsequent amendments were constructed to ensure an efficient and cost-effective system of cooperation and communication between primary and secondary payers.  Defendants' failure to reimburse Plaintiffs and Class Members runs afoul of the Medicare Act and has directly contributed to the ever-increasing costs of the Medicare system.

145.  The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy shown as follows:

    a. Numerosity:  There are hundreds of MAOs/MA Plans throughout the United States who were not reimbursed by Defendants under a policy which provided PIP, BRB, or Med Pay coverage for medical expenses arising out of automobile accidents.  Thus, the numerosity element for class certification is met.

    b. Commonality:  Questions of law and fact are common to all members of the Class.  Specifically, Defendants' misconduct was directed at all Class Members, their affiliates, and those respective organizations that contracted with CMS and were identified as "secondary payers" by Medicare. Defendants failed to make reimbursement payments, report accidents involving clients who were Medicare beneficiaries, and ensure that Medicare remained a secondary payer, as a matter of course.  Thus, all Class Members have common questions of fact and law, *i.e.*, whether Defendants failed to comport with their statutory duty to pay or reimburse MAOs/MA Plans pursuant to the MSP provisions.  Each Class Member shares the same needed remedy, *i.e.*, reimbursement.  Plaintiffs seek to

**THIRD AMENDED COMPLAINT**

enforce their own rights, as well as the reimbursement rights of the Class Members, for medical payments made on behalf of their Medicare enrollees, as a result of Defendants' practice and course of conduct in failing to make primary payment or properly providing appropriate reimbursement.

c. Typicality: Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, failure to make payment and failure to reimburse MAOs/MA Plans. Plaintiffs' claims are, therefore, typical of the Class.

d. Adequacy: Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs' interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members. In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

e. Ascertainability: Locating members of the Class would be relatively simple, since CMS contracts all MAOs/MA Plans, i.e., those entities that have contracted with CMS pursuant to Medicare, and those that contract with CMS indirectly also have contracts with those that do and so forth providing notice to such entities would could be accomplished by direct communication.

146. The Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because a class action in this context is superior. Pursuant to Rule 23(b)(3), common issues of law and fact predominate over any questions affecting only individual members of the Class ("National Damages Class"). Defendants, whether deliberately or not, failed to make required payments under the MSP provisions and failed to reimburse Class Members and those organizations that assigned their recovery

**THIRD AMENDED COMPLAINT**

rights to Plaintiffs, thus depriving both Plaintiffs, as assignee of the right to recovery, and Class Members of their statutory right to payment and reimbursement.

147. Proceeding with a damages class is superior to other methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs/MA Plans to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

148. Administering the proposed National Damages Class will be relatively simple. The Defendants maintain a listing of every policy they have issued containing PIP, BRB, or Med Pay coverage. Additionally, Defendants know which of their policy holders have been involved in an automobile accident. Once that data is compiled and organized, Plaintiffs can determine which of the policy holders were Medicare beneficiaries at the time of the accident. Then, using the database, Plaintiffs and the Class Members can identify those payments made for medical treatment where the Defendants were (1) the primary payers and (2) for which reimbursement was not made. Indeed, a Florida state class was recently certified in *MSPA Claims 1, LLC v. Ocean Harbor Casualty Insurance*, Case No. 2015-1946 CA-01 (Fla. Cir. Ct. 11 Dist.) and *MSPA Claims 1, LLC v. IDS Property Casualty Insurance Co.*, Case No. 15-27940-CA-21 (Fla. Cir. Ct. 11 Dist.) using the same methodology.

149. The Class is also properly brought and should be maintained as a class

**THIRD AMENDED COMPLAINT**

action under Rule 23(b)(2) ("Injunctive Relief Class").  Defendants have acted or refused to act on grounds that apply generally to the Class, such that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole.

## II.   National Issues Class

150.   Plaintiffs seek, in the alternative to a National Damages Class and Injunctive Relief Class, a National Issues Class.

151.   Rule 23(c)(4) provides that an action may be brought or maintained as a class action with respect to particular issues when doing so would materially advance the litigation as a whole.

152.   In an effort to materially advance the litigation as a whole, pursuant to Rule 23(c)(4), Plaintiffs bring this action on behalf of themselves and the Class Members to resolve, *inter alia*, several important issues:

   a.  Whether Defendants occupy primary payer status as defined by the MSP provisions;

   b.  Whether Defendants' PIP, BRB, or Med Pay policy coverages qualify them as primary payers for medical expenses arising out automobile accidents;

   c.  Whether Defendants properly complied with their reporting requirements;

   d.   Whether Class Members are entitled to double damages;

   e.  Whether Defendants' failure to timely challenge the reasonableness and/or necessity of payments made by the Class waives the defense; and

   f.  Other threshold legal and factual questions that apply to the entire class.

153.   The Issues Class would be "carved at the joints" after disposition of the preliminary questions of the Defendants' status as primary payers and their duties flowing therefrom.  The individual Class Members would then be able to rely upon the preclusive effect of the determination of Defendants' status as primary payers to then individually litigate specific issues such as damages.

49

**THIRD AMENDED COMPLAINT**

154.   The Issues Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a. Numerosity: Individual joinder of the Issues Class Members would be wholly impracticable. There are hundreds of MAOs/MA Plans throughout the United States who were not reimbursed by Defendants under a policy which provided PIP, BRB, or Med Pay coverage for medical expenses arising out of automobile accidents.  Thus, the numerosity element for class certification is met.

b. Commonality: Questions of law and fact are common to the Issues Class. As this is an issues class under Rule 23(c)(4), there are by definition common questions of law applicable to all Class Members.

c. Typicality:  Plaintiffs' claims are typical of the Class because their claims arise from the same course of conduct by Defendants, *i.e.*, failure to make payment and failure to reimburse MAOs/MA Plans.  Plaintiffs' claims are, therefore, typical of the Class.

d. Adequacy:  Plaintiffs will fairly and adequately represent and protect the interests of the Class.  Their interests in vindicating these claims are shared with all members of the Class and there are no conflicts between the named Plaintiffs and the putative Class Members.  In addition, Plaintiffs are represented by counsel who are competent and experienced in class action litigation and also have no conflicts.

155.   The Issues Class is properly brought and should be maintained as a class action under Rule 23(b) because an issues class action in this context is superior. Pursuant to Rule 23(b)(3), common issues predominate over any questions affecting only individual Class Members.  Proceeding with an issues class is superior to other

methods for fair and efficient adjudication of this controversy because, *inter alia*, such treatment will allow a large number of similarly-situated MAOs/MA Plans to litigate their common claims simultaneously, efficiently, and without the undue duplications of effort, evidence, and expense that several individual actions would induce; individual joinder of the individual members is wholly impracticable; the economic damages suffered by the individual class members may be relatively modest compared to the expense and burden of individual litigation; and the court system would benefit from a class action because individual litigation would overload court dockets and magnify the delay and expense to all parties. The class action device presents far fewer management difficulties and provides the benefit of comprehensive supervision by a single court with economies of scale.

## JURY TRIAL DEMAND

156. Plaintiffs demand a trial by jury on all of the triable issues within this pleading.

## PRAYER FOR RELIEF

157. WHEREFORE, Plaintiffs, individually and on behalf of the Class Members described herein, pray for the following relief:

    a. find that this action satisfies the prerequisites for maintenance of a class action pursuant to Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3) and/or (c)(4), and certify the respective Classes;

    b. designate Plaintiffs as representatives for the respective Classes and Plaintiffs' undersigned counsel as Class Counsel for the respective Classes; and

    c. issue a judgment against Defendants that:

        i. grants Plaintiffs and the Class Members a reimbursement of double damages for those moneys the Class is entitled to under 42 U.S.C. § 1395y(b)(3)(A);

**THIRD AMENDED COMPLAINT**

ii.    grants Plaintiffs and the Class Members a reimbursement of damages for those moneys the Class is entitled to pursuant to their direct right of recovery for breach of contract within Count II;

iii.    grants Plaintiffs and the Classes alleged herein equitable relief by issuing an injunction ordering Defendants to comply with their statutory duties, lest Plaintiffs and the Class Members suffer irreparable future harm;

iv.    grants Plaintiffs and the Class Members pre-judgment and post-judgment interest consistent with the statute; and

v.    grants Plaintiffs and the Class Members such other and further relief as the Court deems just and proper under the circumstances.

Dated:  May 29, 2018

**BAUM HEDLUND ARISTEI & GOLDMAN, P.C.**

_/s/ R. Brent Wisner_
R. Brent Wisner, Esq. (SBN 276023)
rbwisner@baumhedlundlaw.com
Michael L. Baum, Esq. (SBN 119511)
mbaum@baumhedlundlaw.com
Pedram Esfandiary, Esq., (SBN 312569)
pesfandiary@baumhedlundlaw.com
12100 Wilshire Blvd., Suite 950
Los Angeles, CA 90025
Tel:  (310) 207-3233
Fax:  (310) 820-7444

**PENDLEY, BAUDIN & COFFIN, LLP**
Christopher L. Coffin (_pro hac vice_)
Tracy L. Turner (to be moved _pro hac vice_)
Courtney L. Stidham (to be moved _pro hac vice_)
1515 Poydras Street, Suite 1400
New Orleans, LA 70112

52

**THIRD AMENDED COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Phone: (504) 355-0086
ccoffin@pbclawfirm.com
tturner@pbclawfirm.com
cstidham@pbclawfirm.com

*Attorneys for Plaintiffs*

53

**THIRD AMENDED COMPLAINT**